UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

LORRIE SIMMONS,

    Plaintiff,

vs.                       CASE NO.: 8:21-cv-     -     -

CITY OF SARASOTA, FLORIDA,

    Defendant.
_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, Lorrie Simmons, by and through her undersigned counsel, hereby sues defendant City of Sarasota, Florida, her former employer.

Plaintiff brings this action pursuant to Title VII of the Civil Rights Act, 42 U.S.C. §§2000e-2(a), (k) & (m), and 42 U.S.C. § 1981(a) & (b).  This action is brought to remedy the violation of Ms. Simmons' federal statutory rights not to be treated to adverse employment conditions on the basis of her race and sex, and the violation of her right to be free from unlawful retaliation.

### JURISICTION AND VENUE

1. This Court has jurisdiction under 28 U.S.C. §§ 1331 & 1343 over the federal claims brought in this action.

2. Venue is proper under 28 U.S.C. § 1391(b), 42 U.S.C. § 2000e-5(f)(3), and Local Rule 1.04(a), as plaintiff's claims arose in Sarasota County, Florida.

## PARTIES

3. Plaintiff, Lorrie Simmons, was at all relevant times an employee of defendant. She is an "employee" as defined by 42 U.S.C. § 2000e(f). Her race is Black, and her gender is female.

4. Defendant is a Florida political subdivision, and is an "employer" as defined by 42 U.S.C. § 2000e(b).  Plaintiff worked at all relevant times as an employee of defendant City of Sarasota, Florida. All actions described below occurred in Sarasota County, Florida.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

5. Plaintiff has exhausted her administrative remedies as to her Title VII claims. She timely filed her charge with the Equal Employment Opportunity Commission, which eventually issued Ms. Simmons a "right to sue" letter dated April 22, 2021. There is no exhaustion requirement under 42 U.S.C. § 1981.  This action is thus timely filed.

## FACTS COMMON TO BOTH COUNTS

6.  Ms. Simmons holds a Bachelor's and Master's in Accounting, a Master's in Business Administration, and is a certified Government Finance Officer.

7. The City of Sarasota, through its Finance Director, Kelly Strickland, hired Ms. Simmons in June 2017 as Manager of Accounting and Payroll Systems.

8. Ms. Simmons was hired as part of a succession plan relating to the anticipated retirement of David Flatt, the Deputy Finance Director, in 2019.

9. Ms. Simmons was the first, and to date the only, Black manager in the Department.

10. Ms. Simmons' work performance was highly rated by Mr. Flatt and Ms. Strickland. In her June 27, 2019 written performance evaluation for the evaluation period of June 8, 2018 to June 7, 2019, that is, for her second full year of service, Ms. Simmons received high ratings from Mr. Flatt, and those ratings were endorsed by Ms. Strickland.

11. On a scale of 1-5, with 5 the highest rating, Ms. Simmons received either a 4.0 or a 4.5 on each of the nine metrics for which she was evaluated, for an average of 4.33. An overall "above average" rating applies to a range of 4.0 to 4.5. Ms. Simmons received a salary increase as a result of her "above average" rating.

12. Given her high ratings leading into the two-year mark of her employment and Mr. Flatt's imminent retirement, Ms. Simmons fully expected to transition into the Deputy Finance Director position, just as she discussed with Ms. Strickland and Mr. Flatt at the time of her June 2017 hiring.

13. Instead, in August 2019, without being posted, the job was offered to Kelly Bennett, a white female, who was a Senior Budget Analyst and whose job position was four steps below Ms. Simmons'.

14. Ms. Bennett had not applied for the position. She did not have Ms. Simmons' qualifications. Ms. Bennett did not train with the Mr. Flatt, as Ms. Simmons did. Unlike Ms. Simmons, Ms. Bennett never worked on the

Comprehensive Annual Financial Reports, Annual Audit, Annual Financial Audit, or Interim Financial Reports.

15. Ms. Bennett declined the offer. Accordingly, Ms. Simmons applied for the promotion, and was interviewed by Ms. Strickland and Mr. Flatt for the Deputy Finance Director position on September 24, 2019. At that time, Ms. Simmons was informed that, among the 35 applicants, she was the only qualified candidate.

16. Ms. Simmons received no notification regarding whether she received the promotion.

17. Instead, on September 30, 2019, the Deputy Finance Director position was re-posted. Ms. Simmons inquired of Mr. Flatt the reason she was not promoted. Mr. Flatt informed Ms. Simmons that he assumed Ms. Strickland had informed her of the reason. Ms. Simmons immediately requested a meeting with Ms. Strickland and Mr. Flatt.

18.  At that meeting, Ms. Simmons requested Ms. Strickland to explain the reason for the decision to deny her the promotion. Ms. Strickland responded: "Well, you have a lot going on. You're a single mama. You've got your two boys and you have a lot outside of work that you ha[ve] to take care of." Ms. Strickland provided no reason related to Ms. Simmons' work performance for her non-promotion.

19. Other members of the staff learned that Ms. Simmons had not been selected. Some of them shared with Ms. Simmons some examples of Ms. Strickland's prior conduct, of which Ms. Simmons was not previously aware.

20. For instance, Ms. Simmons learned that Ms. Strickland had previously made a racially-charged statement while planning a lunch with Finance Department staff. Another example was that Ms. Strickland, while in the workplace during working hours, displayed photographs from a recent wedding she attended, and the photographs prominently displayed a Confederate flag.

21. The employees reported this information to Ms. Simmons in her capacity as their manager. The staff members reporting this conduct to Ms. Simmons expressed their dismay with Ms. Strickland's racially-charged comments and conduct. Ms. Simmons was the only Black employee in the City's Finance Division, and the only manager remaining at that time.

22. Ms. Simmons reported this information to Assistant City Manager Marlon Brown and Human Resources Director Stacie Mason in December 2019.

23. Upon the conclusion in early 2020 of an investigation of Ms. Strickland's conduct, the defendant City confirmed that she indeed made the racially-charged statements and displayed the racially-charged photographs. Ms. Strickland initially denied she needed additional diversity training, eventually accepting the need for it only grudgingly.  In addition, the City found that Ms. Strickland's initial offer of the promotion to Ms. Bennett in August 2019 was inappropriate because it failed to comply with standard procedures.

24. Meanwhile, the Deputy Finance Director position was offered to a white male in December 2019, and he accepted. However, his performance was inadequate, and he was terminated from that position at the end of February 2020. The job was not re-posted. Instead, the position was offered a second time to Ms. Bennett in May 2020, who on this occasion accepted the substantial promotion.

25. At the conclusion of the investigation of Ms. Strickland in the spring of 2020, she began a campaign of making unreasonable demands of Ms. Simmons and her staff.

26. Ms. Strickland unreasonably moved deadlines during the financial audit, moved monthly report deadlines, and unreasonably demanded Ms. Simmons and her staff to work longer hours and on weekends. As a result, one of Ms. Simmons' staff resigned, and one requested a transfer to a different City department.

27. The declining morale and toxic environment were reported to Ms. Strickland's immediate supervisor, John Lege. It was also witnessed by those accounting department employees who remained.

28. These retaliatory acts continued even after the onset of the COVID-19 pandemic. For example, Ms. Strickland required Ms. Simmons, who was restricted to essential travel only in her home county, Hillsborough County, to drive to Sarasota County to pick up the printed Comprehensive Annual Financial Report.

29. Ms. Strickland also issued Ms. Simmons a new, annual performance evaluation of 2.5, compared with the 4.33 score she received the previous year, that is, before her unsuccessful application for the promotion. Ms. Strickland then created a Performance Improvement Plan, and assigned Ms. Bennett to administer the plan and monitor Ms. Simmons. Again, Ms. Bennett was promoted into a position for which she had no training or experience, as her previous position was four steps below Ms. Simmons'.

30. This constituted a constructive termination. Like any other reasonable person in the same circumstances, Ms. Simmons resigned.

31. These facts are more than sufficient to establish that Ms. Simmons was subject to unlawful discrimination and retaliation on the basis of race and sex. Ms. Simmons, in contrast to a white female and a white male who were offered the job despite demonstrably inferior qualifications, was fully qualified for the promotion.

32. There is no non-discriminatory explanation for Ms. Strickland's refusal to promote Ms. Simmons in September 2019, particularly in light of a very strong annual evaluation little more than two months earlier. Evidence that Ms. Strickland harbored both a racial, sex-bases, and otherwise unlawful animus toward Ms. Simmons is present, and admissible. The initial explanation Ms. Strickland offered for the non-promotion was, again, that Ms. Simmons was a "single mama" who has "two boys and … a lot outside of work that [she] ha[d] to

take care of." No similarly-situated male would be subject to the same discriminatory treatment.

33. Ms. Simmons learned that Ms. Strickland evinced a pattern and practice of unacceptable workplace conduct revealing racial animus. This racially-charged conduct is evidence of Ms. Strickland's state of mind in refusing to promote the only Black manager in the Department, despite Ms. Simmons' high evaluations, substantial experience, and her objectively ideal qualifications for the promotion.

34. Ms. Simmons was also discriminated against on the basis that she opposed Ms. Strickland's discriminatory conduct. Ms. Strickland retaliated against Ms. Simmons by promoting a white male, and then for the second time a white female, into the position for which Ms. Simmons was best qualified.

COUNT ONE
TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 (as amended)

35. All paragraphs numbered 6 through 34 are hereby re-alleged and adopted.

36. Defendant committed an unlawful employment practice against Ms. Simmons because it discriminated against her because of her race, Black, and because of her gender, in violation of 42 U.S.C. §§ 2000e-2(a) & (k), and as actionable pursuant to 42 U.S.C. § 2000e-5(f)(1). Plaintiff's race and gender were also motivating factors in defendant's discharge of plaintiff, in violation of 42 U.S.C. § 2000e-2(m). Defendant also engaged in unlawful retaliation against Ms.

Simmons because her adverse employment actions were taken against her in violation of 42 U.S.C. § 2000e-3(a).

37. Defendant's actions constituted an unlawful employment practice and unlawful discrimination on the basis of race and gender, in violation of 42 U.S.C. § 2000e-2(a)(1), and unlawful retaliation, in violation of 42 U.S.C. § 2000e-3(a).

38. This unlawful employment practice and discrimination, and unlawful retaliation, caused Ms. Simmons injury and damages in the form of future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses pursuant to 42 U.S.C. §§ 1981a (a) & (b)(3).

39. Ms. Simmons prays for all relief available pursuant to 42 U.S.C. §§2000e-5(g)(1) & (2)(b, including injunctive relief in the form of back pay, and any other equitable relief the court deems appropriate. Ms. Simmons also prays for reasonable attorneys' fees as part of her costs, pursuant to 42 U.S.C. § 2000e-5(k). Ms. Simmons also prays for an award of compensatory and punitive damages pursuant to 42 U.S.C. § 1981a(a)(1) & (b).

### COUNT TWO
### (42 U.S.C. §§ 1981(a) & (b))

40. All paragraphs numbered 6 through 34 are hereby re-alleged.

41. Defendant, on the basis of Ms. Simmons's race, violated her rights to make and enforce contracts, including her right to make, perform, and modify

her employment contract, and violated her right to enjoy all benefits, privileges, terms, and conditions of the contractual relationship, because it discriminated against her because of her race, and retaliated against her, in violation of 42 U.S.C. §§ 1981(a)(1) & (b).

42. These unlawful employment practices, discrimination, and retaliation caused Ms. Simmons injury and damages in the form of future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses pursuant to 42 U.S.C. § 1981a(b)(3).

43. Ms. Simmons prays for all relief available pursuant to 42 U.S.C. §1981, including injunctive relief in the form of back pay and any other equitable relief the court deems appropriate. Ms. Simmons also prays for reasonable attorneys' fees as part of her costs, pursuant to 42 U.S.C. § 1988. Ms. Simmons also prays for an award of compensatory and punitive damages pursuant to 42 U.S.C. § 1981a(a)(1) & (b).

PRAYER FOR RELIEF

WHEREFORE, Ms. Simmons prays that this Court will reward:

1. Compensatory damages;
2. Punitive damages;
3. Declaratory relief;
4. Standard costs;

      5.     Injunctive relief including back pay and front pay in lieu of reinstatement,

      6.     Statutory attorney's fees and costs; and

      7.     All other relief the Court deems just and equitable.

WHEREFORE, plaintiff files her complaint, and demands a jury trial on all issues so triable.

Respectfully submitted this 21st day of July, 2021,

FARMER AND FITZGERALD, P.A.

*/s/ Matthew Farmer*
Matthew P. Farmer, Esq.
Fla. Bar No. 0793469
1560 W. Cleveland St.
Tampa, Florida 33606
(813) 228-0095
FAX (813) 224-0269
MattFarmer1@aol.com